*Taney*, for the Appellant, contended that the paper ex-hibited was to take effect as a will if the writer did not return; and as he did return, it can have no effect. A will to take effect on a contingency, has none if the contingency does not happen. *Parsons vs. Lanoe*, 1 *Ves.* 190. S. C. *Amb.* 557. *Lugg vs. Lugg*, 2 *Salk.* 592. S. C. 1 *Ld. Raym.* 441.

1808
Hay
vs
Conner

*Shaeff*, for the Appellee, contended, that it did not appear that the appellant had any interest in or right under the will to justify his contesting its being admitted to record, and appealing to this court from the decision of the orphans court. He admitted that the orphans court were wrong in their decision.

DECREE REVERSED.

---

Hay, *et al.* vs. Conner.

DECEMBER.

APPEAL from *Baltimore* County Court. The appellants, by their *next friend*, brought an action of *trover* in that court against the appellee, for the conversion of a mulatto male slave called *James Perry*. The general issue was pleaded. The facts are stated in the following opinion of the county court, delivered at the trial in February 1802, by

*Where a mother, as the natural guardian of her infant children, who were under the age of 14 years, hired a slave belonging to them, to a sea captain, to perform a voyage on wages, the slave to be returned, &c. and the vessel being sold at the port to which she sailed, by her owners, the slave was put by the captain on board of another vessel bound home, and furnished with provisions for the voyage, but never returned home. In an action of trover prosecuting by the children, by their prochein amy, against the captain, for the value of the slave—Held, that the action was weak brought.*

H. RIDGELY, Ch. J. In this case the evidence offered to the jury is, that *John Hay*, deceased, father of the plaintiffs, in his life-time executed a bill of sale to the plaintiffs, who were and still are infants under the age of twenty-one years, by which he sold to them a negro slave by the name of *James Perry*, (who is the slave mentioned in the declaration;) that *John Hay* departed this life intestate, leaving his said infant children in the care and under the protection of their mother, *Martha Hay*; that *Martha Hay* afterwards took upon herself to hire for wages the negro slave, *James Perry*, to the defendant, Captain *Conner*, to perform a voyage from *Baltimore* to *Hamburg*, and thence back to *Baltimore*, as a cook on board the ship *Mary*, which the defendant commanded in the voyage. The slave's name was signed under the ship's articles, in pursuance of the said hiring, as a cook; and that the defendant promised *Martha Hay* that he would bring back the

negro, or pay her a generous price for him, in case he should not. The ship *Mary*, on her arrival at *Hamburg*, in the prosecution of her voyage, was sold by the orders of her owner. The negro slave was, after the sale of the ship, put by the defendant on board the ship *Fidelity*, Captain *Weems*, bound to *Baltimore*, and the defendant furnished him with provisions for said voyage. It is admitted that the plaintiffs, at the time of the hiring of the slave by their mother, were the legal and sole proprietors of the said slave, and that the mother of the plaintiffs was not appointed the guardian of the plaintiffs, or either of them, by their father, or by the orphans court, and that they, at the time of the hiring, were under the age of fourteen. It is also admitted, that an action of assumpsit has been instituted in this court, and a recovery had for the slave's wages for said voyage, against the defendant, by *Martha Hay*; and now the present action is brought to recover the value of the slave, upon the ground that this slave has been converted by the defendant to his own use. The great question then, upon which this case depends is, whether under a view of these circumstances the defendant is guilty of a conversion? If he is, the plaintiffs are entitled to a verdict; if he is not, the verdict ought to be for the defendant.

It remains to be considered how this slave came on board the defendant's ship, by what authority he was shipped, and in what capacity he was received by the defendant? He was shipped by *Martha Hay*, at and for the wages of 20 dollars per month, for the voyage. He was received by the defendant at and for these wages to perform the voyage. Who was the contract between? The defendant on the one part, and *Martha Hay* on the other—The slave was no party to the contract. It is a mutual contract binding both the parties; on the part of *Martha Hay*, that the slave should perform the voyage; on the part of the defendant, that he would pay the wages. This I take to be the substance of the contract. Then, had *Martha Hay* power to make this contract? It results, from the relation in which she stands to the plaintiffs, that she had. She is their guardian by nature; as guardian by nature, she has the custody of the persons of her children, and the management of their personal property, and she is accountable to them for the profits. It follows then that she has a right, and

is bound to use the property in such a way as to make it most productive; but she cannot vest the right of property in any other person, or change the species of property, that being in her children, from whom that right cannot be taken without their consent, and they are not capable of giving that consent until they arrive at the age of twenty-one. I hold that the contract is valid and binding on the parties; each had a right and a legal capacity to make it. What legal obligations are imposed on *Martha Hay* by this contract? I take it she is bound and answerable that her slave shall conduct himself, as other seamen do in similar stations on board a ship; on the other hand, the defendant is bound by the contract to conduct towards the slave in the same manner, in every respect, as to other seamen, and if he deserts the ship, Mrs. *Hay* is liable to all such losses as would result to a free mariner who should, under the same circumstances, desert his ship. I mention the contract thus particularly, and its legal operation on both the parties, to show that this slave was shipped or hired by a person having proper authority, and that the defendant did no wrong, and was justified in receiving and employing him in the manner he did, and so far was not guilty of a tort. Is there any thing in the defendant's conduct afterwards that can make him guilty of a tort? Had he a right to send the slave back in another vessel? If he had a right to send the other seamen back in another vessel, he had a right to send the slave back in the same way. The act of congress has thought it a reasonable way, and it is a good rule for us. Did he pay him the two months wages? It is right and proper he should not have paid them; if he had he would have been bound to pay them again to Mrs. *Hay*, with whom the contract was made. *Perry* was a slave, and could do no act, but such as Mrs. *Hay* authorised him to do. The defendant put the slave on board Captain *Weems*, bound for *Baltimore*, to be brought back; by the act of God the vessel was driven out of her course, and compelled to go to one of the Islands. This was no wrong by the defendant. But when there, *Perry* makes his escape. Is this the wrong of the defendant? We think not. Suppose *Perry* had ran from the ship, and drowned himself, would the defendant be answerable? Would it be a conversion? No. Suppose he had, when compelled to go to this Island, committed an offence against the laws

1808

Faget
vs
Brayton

of the state, and was imprisoned, would the defendant be answerable? No. Suppose the slave had taken a knife and cut his own throat, would it be said that the defendant ought to have been standing always by to arrest the blow, and that he, having neglected to do this, is answerable? No. Upon the whole, we think that *Martha Hay* had a right to hire, and that there was no wrong in the defendant in receiving the slave on board as a seaman; that the defendant did all he was bound to do afterwards to ensure the return of the slave, and if he deserted, it was not the defendant's fault; and therefore, it is the opinion of the court, that the defendant is not guilty of a conversion upon the facts so offered and admitted to be proved to the jury. The plaintiffs excepted; and the verdict and judgment being for the defendant, the plaintiffs appealed to this court.

The cause was argued before CHASE, Ch. J. BUCHANAN, and NICHOLSON, J.

*Brice*, for the Appellants, stated, that the principal questions were—1. Whether Mrs. *Hay*, the mother, was guardian by nature, if so, whether as such she had any such power over the property of the children? And 2. Admitting she had such power, whether the defendant has not, by putting the slave in the custody of another person without the knowledge or consent of Mrs. *Hay*, or her children, exercised such an act of ownership over the slave as to amount to a conversion? As to the *first* question, he cited *Fonbl.* 247. *Co. Litt.* 119, b. *(note B)* *Brown's Civil Law*, 181; and the act of 1798, ch. 101.

*Purviance*, and *S. Chase*, Jr. for the Appellee.

THE COURT said, the action of trover was well brought, and reversed the judgment.

JUDGMENT REVERSED, AND PROCEDENDO AWARDED.

---

DECEMBER.

FAGET VS. BRAYTON.

If the declaration in an action of replevin does not allege damage to have been sustained, it is fatal.

APPEAL from *Baltimore* County Court. *Replevin* for a cow. The declaration did not allege any damage to have

Where the declaration in replevin stated the taking of the property to be in *Gay-street*, from the dwelling-house of the plaintiff—*Held*, that evidence of the defendant's having taken the property in *Gay street*, was sufficient without proving that he took it from the dwelling-house of the plaintiff.